UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHERYL D. THOMAS,<br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social<br>Security Administration,<br>        Defendant. | No. 3:11-cv-1625 (MPS) |

**MEMORANDUM OF DECISION**

**I.    Introduction**

On October 11, 2011, the plaintiff, Cheryl Thomas ("Ms. Thomas"), filed a complaint under 42 U.S.C. § 405(g) seeking review of a final decision by the defendant, Carolyn W. Colvin, the Acting Commissioner of Social Security[1] (the "Commissioner"), denying her application for Supplemental Security Income and Disability Insurance benefits. (*See* Compl. [Doc. # 1].)  On May 2, 2013, Magistrate Judge William I. Garfinkel issued a Recommended Ruling recommending that the Court affirm the Commissioner's decision.  (Recommended Ruling [Doc. # 20].)

Under Rule 72(b)(3) of the Federal Rules of Civil Procedure and Local Rule 72.2(b), this Court must review de novo any sections of the Recommended Ruling to which any party properly objects.  Ms. Thomas has raised the following three objections to the Recommended Ruling: (1) its findings and conclusions as to the "treating physician rule" are flawed, (Pl.'s Objection to Rec. Ruling [Doc. # 23] at 2); (2) its findings and conclusions as to the adequacy of the ALJ's credibility assessment are flawed, (*id.* at 10); and (3) its findings as to Ms. Thomas's

---

[1] The Complaint names as the defendant Michael Astrue, who was the Commissioner of Social Security at the time of the decision being challenged and at the time the Complaint was filed.  Ms. Colvin was automatically substituted as the defendant when she became acting Commissioner on February 14, 2013.  *See* Fed. R. Civ. P. 25(d).

vocational capacity are flawed, (*id.* at 17).  Because I agree with the analysis and conclusions in the Recommended Ruling [Doc. # 20] and find that the objections lack merit, I ADOPT the Recommended Ruling in its entirety, GRANT the Commissioner's Motion to Affirm [Doc. # 16], and DENY Ms. Thomas's Motion to Reverse [Doc. # 15].

I add a brief discussion to address a point not fully addressed by Magistrate Judge Garfinkel concerning Ms. Thomas's argument about the "Treating Physician Rule."

## II.     Treating Physician Rule

The only point in the objection that Magistrate Judge Garfinkel did not fully address is one that was not clearly articulated in Ms. Thomas's Motion to Reverse, namely, the argument that the May and June 2011 opinions rendered by Dr. Seely after the ALJ rendered his decision show that the Commissioner violated the "treating physician rule."  (Pl.'s Mem. in Support of Mot. to Reverse [Doc. # 15-1] at 8-10.)  Although Ms. Thomas referred to both the May and June 2011 opinions in her Motion to Reverse, (*id.* at 15-17), the only argument about these two opinions she raised distinctly was that the ALJ had failed to consider the June 2011 opinion (*id.* at 30-31) – an argument that Magistrate Judge Garfinkel properly rejected, (Rec. Ruling [Doc. # 20] at 29).  This Court does not ordinarily review objections that were not presented to the Magistrate Judge, *Burden v. Astrue*, 588 F. Supp. 2d 269, 279 (D. Conn. 2008) (noting that objections not presented to the Magistrate Judge are waived), but because these opinions were referred to in some detail in the background section of the Motion to Reverse, (*see* [Doc. # 15-1] at 15-17), this Court will now address the argument that the May and June 2011 opinions demonstrate that the Commissioner violated the treating physician rule.

As Magistrate Judge Garfinkel noted, the ALJ himself could not have addressed the May and June 2011 opinions of Dr. Seely because they were rendered after he issued his ruling.  (Rec.

Ruling [Doc. # 20] at 29.) Both opinions were, however, submitted to the Social Security Appeals Council, which considered them and concluded that "this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 1-2.)

I find that the May and June 2011 opinions of Dr. Seely do not warrant reversal or remand in this case. The May 2011 opinion is vague and conclusory; it consists of a short letter dated May 18, 2011 stating that: (1) Ms. Thomas "has been plagued with a number of significant issues, most notably hand pain with EMG changes believed due to carpal tunnel syndrome along with significant knee pain and structural pathology for which there is a plan for her to have surgery," and (2) "Ms. Thomas is not able to work at this time, but I am hopeful that she will be able to return to work in at least a limited capacity if her issues can be accurately diagnosed and treated." (R. 272.) The first statement does not provide specific information about functional limitations and is generally consistent with the ALJ's decision; the second simply states a conclusion reserved to the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[S]ome kinds of findings [by a treating physician]—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." (internal quotation marks and citations omitted)).

As for the June 3, 2011 opinion – which consists of a form entitled "Physical Medical Source Statement" that Dr. Seely filled out with brief handwritten notations, (R. 564-67) – it is largely consistent with the functional limitations recognized by the ALJ (with one exception discussed below) and largely inconsistent with the statement in the May 18, 2011 letter that "Ms.

Thomas is not able to work at this time." (R. 272.) Specifically, the June 3, 2011 Medical Source Statement indicates that Ms. Thomas is "capable of low stress work" and that her impairments are likely to produce "good days" and "bad days." (R. 567.) Further, asked how many days per month Ms. Thomas would likely be absent from work as a result of the impairments or treatment were she to work full-time, Dr. Seely checked off "about three days per month," eschewing options for "about four days per month" and "more than four days per month." (*Id.*) Finally, the June 3, 2011 indicates that Ms. Thomas can sit for six hours of an eight-hour work day, can "occasionally" lift more than 10 pounds, and can "frequently" lift less than ten pounds, (R. 566-67), – all of which is generally consistent with the ALJ's determinations on the same subjects, (R. 18).[2]

There is, however, a sharp discrepancy between Dr. Seely's June 3, 2011 conclusions about the functional limitations caused by Ms. Thomas's carpal tunnel syndrome and the conclusions of the ALJ. In the Medical Source Statement, Dr. Seely indicated that Ms. Thomas could use her hands and fingers to grasp, turn and twist objects and to make fine manipulations for only 20 percent of an 8-hour working day, and could use her arms for reaching in front of her body and overhead for only 50 percent of the work day. (R. 566.) Dr. Seely also indicates he anticipates that Ms. Thomas's impairments will likely be severe enough to interfere with the

---

[2] There is at least a question about whether the June 3, 2011 opinion "relates to the period on or before the date of the administrative law judge hearing decision" – as required by 20 C.F.R. § 404.970(b). Especially given the discrepancies between Dr. Seely's September 2009 opinion and his June 3, 2011 opinion, it seems likely that each speaks to a different time period, and the date of the latter opinion is obviously after the date of the administrative law judge hearing decision. That said, it is possible that the June 3, 2011 opinion was intended to embrace a time preceding that decision, and, in any event, the fact that Appeals Council considered it at all suggests that the Council viewed it as such. (*See* R. 1); 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only* where it relates to the period on or before the date of the administrative law judge hearing decision." (emphasis added)). The Court will adopt that view as well.

attention and concentration needed to perform even simple work tasks for 25% or more of the work day – the largest percentage available as a choice on the form. (R. 567.) These findings are plainly inconsistent with the ALJ's refusal to assign manipulative restrictions. (R. 21.) Because, as noted, the ALJ did not have the opportunity to consider the June 3, 2011 opinion but the Appeals Council did, the question is "whether there is substantial evidence to support the decision of the [Commissioner]." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). And more specifically, because Dr. Seely was Ms. Thomas's primary treating physician, the question is whether the Secretary's decision violates the treating physician rule, which is explicated in the Recommended Ruling. (*See* [Doc. # 20] at 28-29.) I conclude that it does not for the following reasons.

First, there is no other medical evidence in the record to support Dr. Seely's June 3, 2011 opinion that Ms. Thomas cannot use her fingers for 80% of the work day and her arms for 50%. Second, there is substantial medical evidence contradicting that opinion, including Dr. Seely's own September 23, 2009 opinion (stating that Ms. Thomas could use her hands and fingers 100% of the time and her arms 80% of the time)[3] and, more importantly, the opinions of the specialists to whom Dr. Seely referred her for her carpal tunnel syndrome and who found, based on an EMG study and examinations of Ms. Thomas, only "some mild evidence of sensory

---

[3] As noted (*see* footnote 2, *supra*), it is likely that the September 23, 2009 and June 3, 2011 opinions cover different time periods, given this and other discrepancies between them, but there is no explanation in Dr. Seely's June 3, 2011 opinion for the dramatic change in Ms. Thomas's ability to use her fingers and arms. To be sure, any medical condition can deteriorate over time, but there is nothing in the medical records that documents a progressive worsening of Ms. Thomas's carpal tunnel syndrome to the point that she cannot use her fingers for 80% of the work day. It is worth noting that this swing in Dr. Seely's opinion is similar to another dramatic shift he made – again, without explanation – in his September 2009 view that the plaintiff's legs had to be elevated 50% of the time, an opinion on which Ms. Thomas relied in her Motion to Reverse. (Pl.'s Mem. in Support of Mot. to Reverse [Doc. # 15-1] at 15.) In June, 2011, he indicated that her legs did not have to be elevated at all. (R. 566.)

neuropathy bilaterally without motor involvement," and also noted that "sensation to light touch is intact but somewhat subdued in the median nerve distribution of her right hand, but it is normal in her left hand." (R. 548, 551, 553; *see also* R. 556 (expressing uncertainty about carpal tunnel diagnosis, noting that "it is limited to just a few fingers," and not indicating any functional limitations as a result of carpal tunnel but noting that "her functional status is quite limited as a result of her knee pain")); 20 C.F.R. § 404.1527(c)(5) (Commissioner generally accords more weight to opinions of specialists about medical issues related to their areas of specialty).[4] Because Dr. Seely's opinion was not consistent with other substantial evidence in the record, including the opinions of other medical experts, the Commissioner was not obligated to give it controlling weight. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). I therefore find that the Secretary's decision did not violate the treating physician rule.

### III. Conclusion

As stated above, because I agree with the analysis and conclusions in the Recommended Ruling [Doc. # 20] and find that the objections lack merit, I ADOPT the Recommended Ruling in its entirety, GRANT the Commissioner's Motion to Affirm [Doc. # 16], and DENY Ms. Thomas's Motion to Reverse [Doc. # 15]. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
          September 4, 2013

---

[4] I do not rely on the references in the record to "stepwise" treatment of Ms. Thomas's carpal tunnel syndrome as a basis for my conclusion that there is sufficient evidence to support the Commissioner's decision.